Thank you. Good morning. Would the attorneys who are going to orally argue please step up to the podium and introduce yourself to the court. Those who are orally going to argue. For the appellant. Good morning, Your Honor. Jacob Pomerantz, the country of the appellant. Mr. Pomerantz. And who will be arguing for the appellee? I'm Sharon Purcell, Assistant Attorney General, and I'll be arguing on behalf of the Illinois Labor Relations Board. Okay. Both sides have 15 minutes to argue. Oh, excuse me. Are you going to be arguing? I'm Laura Labor-Katz, and I am arguing. I'm just taking a portion of the time for the Illinois State Office of the Treasurer. Okay. Both sides have 15 minutes. The ladies representing the appellee, you'll have to budget your time accordingly. And the appellant, I'm sure you're going to reserve some of your 15 minutes for rebuttal. Very good. Mr. Pomerantz, you may proceed with your argument on behalf of the appellant. Thank you. Good morning, and may it please the Court. Sarah Shuring is an employee of the State Treasurer. She worked for the Treasurer for 13 years in the IT Division, Information Technology. Her job is, as the name would imply, to take care of all things web and electronic related, primarily dealing with email issues, problems with the server, and so on. She's also a member of the bargaining unit, the collective bargaining unit, the union agreement. And she was, at the time that the Treasurer filed his petition, seeking to remove her from the benefits of that status on the grounds that she was a confidential employee within the meaning of the Illinois Labor Relations Act. In order to be excluded as a confidential employee, the employee must be one who, in the regular course of his or her duties, has authorized access, it's authorized access, to information relating to the effectuation and review of the employer's collective bargaining policies. The information relating phrase has been construed by the Supreme Court in the courts following to mean information that would put the employer's bargaining position, would prejudice the employer in his bargaining position, could reveal to the union advanced strategies. It specifically does not include raw data or information that lay people might consider confidential, but does not relate specifically to the collective bargaining process. Now, the board found that Ms. Schering was a confidential because she could be called upon to work with people who were having problems in the Treasurer's office with their Excel programs. That there are people who work in the Treasurer's office who work on budgets, not surprisingly, Treasurer's office, and that some of those people use Excel documents. From this week read, the board concluded that, therefore, when she works on an Excel document, she must see information that's contained in the document, and that information very well may be somehow, in some way, related to collective bargaining. But the facts at the hearing demonstrated that Sarah, in her 13 years, had never seen any collective bargaining documents. This was not contested. Well, let's look at the first hurdle, at least in my mind. What's the standard of review that this court must consider your review? I would believe it would be clearly erroneous. Clearly erroneous? Yes. Sarah never saw any collective bargaining documents. So why is it clearly erroneous? I'm sorry? So why is the board's decision clearly erroneous? Well, in the words of the... Assuming that's the standard of review. Because there are not facts sufficient to justify it. Well, you're asking us, from your preliminary remarks, I assume that we're going to be making an analysis based upon an authorized access basis. Yes. And from my review of the record, she did, in fact, have authorized access. No. No? No. She had authorized access to things, but she didn't have authorized access to collective bargaining information. No such document. The employer bears the burden of demonstrating all the elements, of course. And so one of the elements that they have to demonstrate is the kind of document that would be considered revealing of the employer's collective bargaining strategy. Sarah's never seen any such document. No such document was introduced at the hearing. And I think a negative inference must be drawn. Well, whether or not she's seen it, isn't that an immaterial issue? Not at all. I mean, either... The issue is, did she have authorized access? Now, whether or not she, in fact, saw these documents or within the last 11, 12, 13 years, that becomes immaterial, doesn't it? No, it doesn't. The Illinois Supreme Court was explicit that when you're dealing with an incumbent employee, what she actually has done is the issue, not what she may have done, what not. She could speculatively do... And what case is that? What case are you... It's referred to in my brief, the Chief Judge of Cook County, I think, is the name of the case. So, Mr. Pomerantz, the Supreme Court case in 1992, if it set that precedent in terms of what the employee has already done as part of her job performance, how do you reconcile it with a 2012 later case, then, in the CMS case where the attorney had not performed any work on the collective bargaining aspects of, you know, the legal duties? Well, there are a lot of CMS cases. Are you referring to the Fourth Appellate? Yes. Okay. So the Fourth Appellate decision, first of all, most of the people that were excluded in that case dealt with another part of the confidential test. That is the relationship to decision makers, the people that were engaged in bargaining. That test doesn't happen over here. Secondly, it dealt... To the extent that it dealt with authorized... That was called the authorized access test. It dealt with material that was in the record. It dealt with stuff that the board... Not the board. The court determined was, in fact, confidential. There were real things to look at. Here, there's no such thing. So in the Fourth District case, the 2012 case, the CMS case, was there any evidence that that attorney was in... Could be involved in labor, employment issues, and collective bargaining, even though he hadn't already performed this? No, I don't think there was any hint about that. There were people that had a relationship to the decision makers, and it was information that they had worked with. If we're talking about the same CMS case... The board found that there was a confidential employee relationship. Or found there wasn't, and the appellate court reversed. Found there was a confidential employee. If we're talking about employees, I think the category was PSA 2s. That was my case. But there have been a number of, obviously, CMS cases. I'm talking about the case that the appellant or that the appellate has relied on, yes. Yes. Okay. I think I've discussed that. Mr. Gray, who is the only witness, the only treasurer witness, who was, in fact, in some way involved in collective bargaining agreement, testified in collective bargaining for the employer, testified as to the documents he uses, the type of documents he uses. Never made any reference to an Excel document at all. Well, he said that he had many responsibilities. He's a member of the Treasurer's Collective Bargaining Committee, and he uses the Internet to develop collective bargaining proposals. And this lady involved has the right to read all of the emails in the spam folder, can access employee Internet logs, including those of Dan Gray. So that's access, isn't it? The ALJ, the administrative law judge, determined that that did not meet the confidential standards. The board did not choose to reverse her. There's been no cross-appeal filed on that issue. So I would say, no, that's not. And I don't know what the argument would go to, if it would go to, you know, labor nexus, which she rejected. No, but our standard of review, we review the board's decision, the board's decision. And you volunteer that we have a clearly erroneous standard here. So based upon what she has access to that's been testified in the record, doesn't it appear that the board's decision should stand? Because it's not clearly erroneous. She had access to Gray's stuff. Gray is on the committee. Where am I wrong? Well, her immediate supervisor specifically said she is not authorized to look at the content of emails. Specifically, her boss said she is not authorized to look at the content of emails and not authorized. But she could. She had access. So could the maintenance person open the desk drawer and look at documents. The maintenance person isn't before this court. It's this lady named Sherry. I know. The court is the beneficiary of much authority on this subject. And that authority has, that it's not physical access that matters. It's the employer's desire that you work with the content of this material. And her boss explicitly said she's not authorized to do that. And, of course, we borrow a lot of our law, for example, from the NLRA, NLRB. And they've dealt with cases, people emptying the waste paper basket, people fixing the copiers. To fix a copier, you have to look at the document to see whether the type is right or not. That doesn't make you a confidential employee. Isn't that the premise that runs against you from your opponent? In other words, they argue that having this access limited to some degree, but it's casual. In other words, that she would open up documents while doing other IT performance duties. And that that gave her the access to this information. Her position is very analogous to the positions in the Niles Township case that this court held a few years ago. That the access has to be regular. And if it wasn't regular in one year in the Glenview case or five years in the Niles case, it's not considered regular. Here there's been 13 years and there's been no such actual access. So the courts have held on the subject that these facts don't amount to authorized access. Was there any evidence at the hearing as to how long the treasurer's office has relied on Excel documents or Excel formatted information from the budget office or anything like that? If I may, no, there was no such evidence. And two, when you say budget office, the treasurer's office has a lot of budgets. Many of which have nothing to do at all with collective bargaining. So there was no testimony that said we use Excel to develop documents that we're going to present to the union. There was no such testimony. There was testimony, yeah, we use Excel documents. Yeah, people who work on budgets, many of which exist in the treasurer's office, use Excel. And if she was called upon to work on an Excel document, she might see something. So even if she saw something, I hate to engage in the speculation, but still the courts have held that mere statistical information doesn't constitute the kind of information that gives away strategy. Are these entries in Excel in particular dynamic or static? In other words, do they stay there permanently and can be revisited, or because of the various budget analysts that are cranking out treasury information, do they change and morph into other things? Well, we wouldn't know if no such document was entered into the record. There's no evidence as to this. It's just something called Excel. We've referenced the Excel documents. Again, the employer bears the burden of exclusion. I'm sorry. The employer bears the burden of demonstrating facts sufficient to justify the exclusion, and there really aren't any. This case is really about what isn't there. Why do you suppose this is coming up after 13 years? You know, I don't want to engage in the same speculation the board did. I think it's about salary. I think it's about removing the person from the collective bargaining protections so that the employer can basically do what he wants with her. And I will reserve the rest of my time on her. Thank you. We only have 10 minutes left for rebuttals, sir. Good morning, Your Honors. Sharon Purcell on behalf of the respondent, Illinois Labor Relations Board. The issue here that was before the board was whether this particular employee, Ms. Shearing, in ISA 2 is confidential within the meaning of the act because she troubleshoots Excel documents. That's what the board limited its decision to, that these documents were prepared by the Treasurer's Office employees. They may contain collective bargaining information that is provided to the Treasurer's Office staff members involved in collective bargaining, including those on the Treasurer's negotiating team, Mr. Gray, and therefore she has authorized access to documents containing information related to collective bargaining. The board's decision, I agree, is reviewable for clear error, and so it's only if it can be said this decision leaves a firm and definite conviction that the board has made a mistake, that it should be reversed. And the board's findings of fact here are prima facie true and correct. The board makes the findings and applies them after its investigation and its hearing on this, which is basically a fact-finding hearing to find out what the employee does, what the kind of landscape of the business office is, because they're going to differ, you know, workplaces differ. You might have, you know, quite a number of employees doing these duties here. There's three. Ms. Shearing is the only ISA 2, and the testimony was that she, after another employee left, she primarily took the Excel troubleshooting on, and Mr. Lau and the IT supervisor could as well do that duty. This is an authorized access. Excuse me. Mr. Gray and the person she directly reported to both indicated that they found, that they did not find her to have been involved in taking information out of Excel or otherwise using it, that it was only related to fixing bugs, putting people in or taking people out of the system, just general IT work. That occasionally she might open a document to fix something for somebody, but that that was a non-often occurring thing. So they themselves did not find her to be complicit in anything regarding the creation of formulations or other things relating to the collective bargaining matters. Your Honor, she doesn't have to have a role in formulating or, you know, any kind of, you know, what goes into the document. What the testimony was, the evidence was that Mr. Gray gets information from employees in the budget and employee office when he's formulating proposals to give to the treasurer in collective bargaining when that's going on. And that those employees, the accounting and budget employees, use Excel spreadsheets and so that information, and when he's preparing his white paper as well for what the strategies and goals of the office should be. But those change constantly, don't they? And shift to meet the conditions of what they're developing them for? But that wouldn't, that would not matter. What matters is that the employee has access to the information, that whether or not they're ever going to use that information, it's information that would be of interest for, to the union, possibly in collective bargaining. And whether or not, I would say that if the information shifts, if I'm looking at that and I have that information and I can see how the strategies and the goals are shifting, and it doesn't, whether or not the information is always there or not, you have the information and it could be of interest to the union. Well, it depends on some factors, though. It may or may not be involved in a cycle where the union is active in determining its collective bargaining positions. I'm sorry, I didn't catch all of that. It's not, it depends on what cycle you're in. And if there's nothing coming up for union negotiation, they're not, this wouldn't be relevant at all. Well, if it's related to the review and effectuation of the employer's collective bargaining policies, then it is. But that's not constant. And does it, it happens, how often does it happen? Once a year? Oh, Your Honor, this only has to be in the regular course of her job, her job responsibilities. Right. In relation to when it would make a difference. The second thing is, is there any indication whatsoever that Ms. Sherring shared this information with anybody else? It doesn't make a difference whether it's a year before bargaining begins or, you know, on the eve of bargaining or whatever it is, because this is the employer's collective bargaining information. So that's their information. And the confidential exception to allowing employees to be represented in bargaining units, that exception is there because it recognizes that there are employees whose job duties will, in the course of their duties, whether or not, you know, it's every week, every year, only when collective bargaining is happening. It gives them advance, the potential to have advance notice, knowledge of the employer's confidential labor relations information. And that upsets the normal balancing, the balance of negotiations. And the intended It's a subsequent, it's an undetermined event. Ultimately it could, but on a regular basis, and again, has this shared with anybody else? Has she ever shared this with Sherring? That's not the focus. That's not the inquiry. The inquiry is whether or not the employer, this exception also recognizes an employer is entitled to its own information and it's entitled to have certain employees who it knows and can rely on will not have this conflicting loyalty between an employer and a union. And that's a hallmark of labor relations. And it always, you know, the employer has a right to employees and information that will be loyal to only it and not have this conflict. Then going back to Judge Liu's question, she doesn't share it with anybody, you're saying. If they thought XL has something in it that should not be revealed, she was authorized evidently. Why wasn't she cut off? Why wasn't she barred from fixing anything with someone who had a problem with XL? Well, the board is only looking at what the employee's duties are, what they have been, what, you know, there's various factors. Whether or not she ever did or didn't, that's not the point. Because once you did, you know, the horse kind of has left that barn. Well, you've already said it basically has. You're saying that this is inevitable and is going on. No, no, no. It's not. No. It's the exception in labor law is to avoid that in the first instance. Because then you don't have an employee who has a loyalty to the employer as their employer but also has this loyalty to, you know, the bargaining unit and the representative. And so it keeps everybody at the table on the side that they should each be on at that, you know, the bargaining length. And nobody has, the employer doesn't have an advantage knowing the union and the union doesn't have. Exhibit 131 in the appendix, it gives you the details of what this job description is. And what it is is basically the way I read it, a series of IT issues of how to preserve the system, how to make certain that it's working properly. If the way you're speaking of this happens, in the briefs, the treasurer says that they may abolish this position or they may not. I think that was a different position. It was stated that they may abolish the decision or they may not. This petition for unit clarification originally included another position and they dropped that from the petition because it's vacant and it may never be filled and the board does, you know, they don't make, they're not going to make a determination on something that's not happening. Is that what you were referring to? Yes, but not put the way you do. I take it that they're either going to fill the position or they may abolish the decision and they do have, and they have either of those options. But if that's, you know, what all the ins and outs of how they can abolish a position or not, you know, what the board looks at when it's making its, on a unit clarification, when it's deciding whether or not, you know, an employee can be in or out of a union, you're looking at what is the situation at the time the petition is filed. At the time the petition is filed, there's an employee in this position doing particular duties and there's particular, you know, ways of doing business that that office has and so that's what the board is looking at. Her duties are to do IT work. If you take that list of requirements in that Exhibit 131, then the next person who would take this job and would be asked by someone in the treasurer's office to fix something and by doing that had to open an email, wouldn't you have to fire that person if they did that, based upon how you're applying this to mis-sharing? Your Honor, this is, it is an IT position and part of that is she troubleshoots Excel documents, goes into them, manipulates them as need be, and some of them may be, can have collective bargaining information in them. Whether or not, the board never made, I mean the board never considered the ALJ's recommendation on any of her other duties. It didn't, Mr. Pomerantz explained that the board didn't reverse it, but the board didn't consider it. So all we have here is the Excel. What happens with, you know, anything else? And whether or not somebody can fill a position, this is only, this particular exception exists, as I have explained, because all it does is say, you can do this job, but because it entails A, B, and C, and that gives you potential advanced knowledge to the employer's information, collective bargaining information related to its policies, effectuation and review of its strategies, its proposals, at some point, then it's only the bargaining unit that the employee is not a member of. And that's all I, how I can answer that question. Could we, would you like to have some time for your co-counsel? Yes, Your Honor. Yes. Thank you. Thank you. Thank you. We'll extend your time to seven minutes. Thank you. Proceed. I would like to address a couple of the questions that you had with regard to the cycle. For one thing, Mr. Gray did testify that they were, at the time of the hearing, in the middle of negotiations. They had just concluded negotiations with the Teamsters Union. This is with AFSCME. Those negotiations, in fact, are still ongoing. So during this entire time of the petition for unit clarification, there have been ongoing negotiations. The testimony, and I have to beg to differ a little bit with Mr. Pomerantz's representation, of the supervisor's testimony, it was Ms. Shuring that said that she's not authorized to read anybody's e-mails and she thinks she'd get in trouble for it. There may have been something along those lines, but Ms. Price also testified that she and Ms. Shuring opened up the treasurer's e-mails and sent e-mails for the treasurer out to a collective group, out to all employees. That was one of the things that the treasurer had them do. And I think we have to remember that this is a treasurer's position that happens to be in the union. It's not a union position. We start from this is a treasurer's position. So if a person does have to see that kind of information, sure, they keep their job. The part that doesn't stay static is that they stay in the union. And again, there isn't any testimony that she took information and shared it with the union, but an employer isn't required to wait until harm has been done, until their strategies have been divulged during an active negotiation session, to have a confidential employee. But in this 13 years and all this is going on, and then all of a sudden she's out, just overnight. Was there a discovery of something in the order that you're talking about that made that happen? I think what happens, Your Honor, is that over those 13 years, the use of the network, as in all offices, has really evolved. People rely on e-mail now. People rely on all of the Excel documents. People rely on all of that before where really, I mean, there were more conversations. And Don Gray testified to that. Everything is solely done on the network now. And this Ms. Schering is one of the two network administrators who actually creates the password. Only she and one other person can access everything. Counselor, I'm sorry. Yes. I don't mean to cut you off. I do want to draw attention to the cases because I think it's important to recognize the law that's controlling this. You've got the Niles case. It's the first district case in 2008. And you've got Glenview from 2007, right, out of the fourth district. You've got both the first and the fourth districts talking about the fact that when you've got a position that's been in place for a substantial period, this is a position that's been in place for 13 years, the board is supposed to look at what has actually occurred, right, what the actual access has been. And so that is sort of the quantum of proof that's required, isn't it? And the actual access here has been that she has, in fact, had access to Excel documents all along. It's not Excel documents. The case law doesn't say Excel documents. It doesn't say word. It says collective bargaining material or confidential information, right? Do we have proof that that was what was contained in the Excel documents that she had access to? What we have is testimony from Mr. Gray that said that he and his bargaining team, including the chief budgeteer and the chief accountant, are on the bargaining team and develop the strategies. We also have testimony from Ms. Price that the chief budgeteer and the director of accounting use Excel documents. Do we know, was it in metadata, raw data? Was it spelled out with headers and footers? This is for this particular bargaining position. How would a person know when you opened up an Excel spreadsheet what it was? Well, you know because there, as Mr. Pomerantz said, there are different budgets. There is a treasurer's budget. There are other budgets that they deal with, uncalling property budgets, ICASH, those kind of things. But there's only one treasurer's budget that has personnel items in it. So you have, yes, an absolute line item for personnel. So wouldn't it be a pretty bright line in terms of what the burden of proof is? You would just need to bring in evidence that Ms. Shearing has actually opened up Excel documents, troubleshooted Excel documents containing specifically collective bargaining information regarding budgets or treasury information that's confidential, right? And I believe that that is not, when you look at Wilmette, which is a first district case, and you look at the state police case, which you referred to earlier, that's not what those cases say. Those cases say these persons have intended by the employer, the access is that the employer intends that they have access to these documents, and that's the test. And the authorized access is equals to intended access. The treasurer here very clearly intends that Ms. Shearing has access to these Excel documents. So if the necessity is that we have an employee take the stand and say, yes, I absolutely saw personnel information and salaries, and I know that that affects bargaining, then frankly there's never going to be a finding that somebody is an authorized, that has that intended access. We, the quantum of proof is, did the treasurer intend that Ms. Shearing can access all these documents? Do these documents contain that information? That's in the record. Let me ask you about Chief Judge 1. In that case, it said access to confidential information concerning the general workings of the department or to personnel or statistical information upon which an employer's labor relations policy is based is not sufficient to confer confidential status. And that's specifically why Mr. Gray testified to the fact that as he was at that time the head of the bargaining team, and that's specifically why he talked about how they develop their strategies and how he works with the Director of Accounting and the Chief Budgeteer to develop those strategies. Those aren't just mere statistics at that point. That's what do we want to put in this column, what do we want to put in that column. Those are the kind of documents that he was talking about. And he talked about, you know, conferring with all of these different persons. It just so happens that when you're doing budget information you use Excel and the Chief Budgeteer uses Excel and the Director of Accounting uses Excel. So those would necessarily be that kind of document. Would you please conclude? Yes, absolutely. I think that the State Police case and the Wilmette case from this court demonstrate that, in fact, this was a confidential employee and the board was correct. Thank you. Thank you. Bill? Your Honor, Honorable Lou, I believe the case you're referring to is that State Police case. And in that case the job description of the new attorney was explicit in saying that he has to review documents of a confidential nature. If you look at the job description here, there is no such reference to any such thing. And the person has been on doing the same thing for 13 years. Let me just conclude by saying this. The board clearly built its whole case, its whole decision around her access to Excel documents. Gray, the only person close to collective bargaining, never mentioned Excel documents. There is not sufficient evidence here to find that Sarah Schering is a confidential within the meaning of the act. Thank you, sir. The court is going to take the matter under advisory. The court is adjourned.